MARK T. TILLAR (0029898)
240 Clark Road
Cincinnati, Ohio 45215
513-761-2958

JOHN J. HELBLING (0046727)
3672 Springdale Road
Cincinnati, Ohio 45251
513-923-9740

Trial Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| STEVE LEDFORD, | ) |
|     PLAINTIFFS, | ) Case No.: C-1-01-469 |
| VS. | ) |
| CITY OF CINCINNATI, ET AL., | ) JUDGE DLOTT |
|     DEFENDANTS. | ) |
| | ) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case is about Plaintiff Steve Ledford, an Afro-American citizen of Cincinnati, who went the King Of Clubs located at 2924 Gilbert Avenue, Cincinnati,

Ohio. When he went to leave the area, he was wrongfully approached by the Cincinnati Police, tackled, assaulted, handcuffed and maced.

There are genuine issues of material facts upon which minds may differ when reviewing the precise timing of the approach by Officer Donald Elsaesser and whether the conduct of Mr. Ledford provided enough evidence for Officer Elsaesser to violate Mr. Ledford's rights and privileges afforded under the IV and XIV Amendments of the United States Constitution. The issues of fact will focus on whether the Cincinnati Police Officer had probable cause to even approach Plaintiff Steve Ledford given the facts in this matter and if the conduct of the officers amounted to excessive force.

## II.   SUMMARY JUDGMENT STANDARD

Clearly, the elements listed under Federal Rule of Civil Procedure 56 must be considered in the light most favorable to the non-moving party and the burden is on the defendants to demonstrate their entitlement to Summary Judgment. *Matje v. Leis,* 571 F.Supp 918 (S.D. Ohio, W.D., 1983) citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) and *Felix v. Young,* 536 F.2d 1126 (6th Cir. 1976). As stated in *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc. (1986), 24 Ohio St.3d 198, 201*:

> "The granting of summary judgment is only appropriate if there is no genuine issue of material fact, and reasonable minds can come to but one conclusion which is adverse to the nonmoving party; Civ.R. 56(C). An order granting summary judgment will, therefore, only be upheld where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of

> law when construing the evidence most strongly in favor of the nonmoving party. *Wooster v. Graines* (1990), 52 Ohio St.3d 180, 184-185; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64."

Further, Summary judgment is a procedural device which is used to terminate litigation and, therefore, must be awarded with caution with all doubts resolved in favor of the nonmoving party. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 333; see, also, Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 359.

There are substantial material questions as to the initial approach, and the material facts leading up to Officer Elsaesser apprehending Plaintiff Steve Ledford. The testimony of Officer Elsaesser calls into question his judgment and whether a reasonable officer would have acted in the same manner towards Plaintiff given the totality of circumstances known through discovery. To properly determine whether the conduct of Plaintiff Steve Ledford provided sufficient facts to support probable cause for Officer Elsaesser to approach Mr. Ledford, thereby supporting Defendants' Summary Judgment Motion, the Court must understand the facts of this case.

## III.  FACTS

On July 22, 2000, at or near 3:00 a.m., Plaintiff Steve Ledford came out of a night club and went to his vehicle. (Ledford Deposition. Pg. 31). While going to his vehicle, Mr. Ledford noticed police cars blocking off streets and driving up and down the area streets. (Ledford Deposition. Pg. 31, 34). When Mr. Ledford arrived at his car, he realized that he couldn't exit the area due to the police blocking streets. (Ledford Deposition. Pg. 32).  Mr. Ledford then decided to leave his car and return

to the night club to wait for the police to let traffic out of the area (Ledford Deposition. Pg. 32). While walking back to the club, Mr. Ledford experienced a sudden need to urinate. (Ledford Deposition. Pg. 33). Not being able to get back to the club in time, Mr. Ledford decided to go in back of a nearby building to urinate. (Ledford Deposition. Pg. 33)

Unbeknownst to Mr. Ledford at the time, the police were in the area for the purpose of looking for a black male between 18-20 years old, 5'8", 150 pounds, wearing a black shirt and gray shorts with "corn-rowed" hair for a traffic violation. (Elsaesser Deposition. Pg. 45). Mr. Ledford was 32 years old, stood 6'2", and weighed 275 pounds, wearing a blue and white shirt with black shorts when this event occurred on July 22, 2000. (Elsaesser Deposition. Pg. 41, Exhibit 1 – Arrest Report).

While trying to finish relieving himself, Mr. Ledford peered around a corner to make sure no one was seeing him and at that point, he saw a police officer shine a light at the corner of the building near him. (Ledford Deposition, Pg. 35) Mr. Ledford clearly stated that *at the time he went to the back of the building to start to urinate, he did not see any officers.* (Ledford Deposition, Pg. 34, line 20-21). The police officer who shined the light toward the corner of the building continued past the building and once he finished relieving himself, Mr. Ledford began to walk away to the other side of the building toward the club when he was tackled by numerous officers. (Ledford Deposition, Pg. 35)

While Plaintiff was experiencing this painful event, numerous people were around the area. (Ledford Deposition, Pg. 38, 39; Elsaesser Deposition, Pg 58, 59). While being tackled by the officers, Mr. Ledford was placed in handcuffs while laying on his stomach with the officers on his back, turned over once his hands were

cuffed, and ***then maced*** by the officers.  (Ledford Deposition, Pg. 41).  After injuring Mr. Ledford and macing him, the police proceeded to discuss with each other the fact that Mr. Ledford was not the person that they were looking for wanted for a traffic violation.  (Ledford Deposition, Pg. 42 – 44).  Despite not fitting the description or being wanted, Mr. Ledford was charged with Obstructing Official Business and Resisting Arrest even though another officer involved in the arrest, Officer Kevin Hankerson, has testified that he didn't see Mr. Ledford "obstruct official business."  (Hankerson Deposition, Pg. 74).  Mr. Ledford has never been charged with anything having to do with urinating in a public area.

## IV.  ARGUMENT

> "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.'"
> U.S. CONST. amend. IV. *Dickerson, infra*, 1158.

### A.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Previous Courts have established that the first step in a qualified immunity analysis is whether, based on applicable law, a constitutional violation occurred. *Dickerson v. McClellen,* 191 F.3d 1151 (6th Cir. 1996) *citing Centanni v. Eight Unknown Officers*, 12 F.3d 587, 589 (6th Cir.), *cert denied*, 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994); *Silver v. Franklin Township,* 966 F.2d 1031 (6th Cir. 1992).  If it is found that a constitutional violation has occurred, then the second question asks whether the violation involved "clearly established constitutional rights of which a *reasonable person* would have known."  *Id.* at 1158.

MEMO IN OPPO - 5

### 1.     OFFICER ELSAESSER DID NOT HAVE PROBABLE CAUSE TO APPROACH PLAINTIFF

First, this case must focus upon the *initial* stop of Mr. Ledford to determine the appropriateness of Officer Elsaesser's decision to approach Mr. Ledford. Irrespective of all of the other officers' statements, this matter boils down to the statements made by Officer Elsaesser and Mr. Ledford. The other officers' involvements came *after* the constitutional violation had occurred – that of the wrongful stopping of Mr. Ledford. The law has clearly established that a person cannot be arrested without probable cause. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473 (1961). Further, Mr. Ledford had a clearly defined constitutional right to be free from unreasonable seizures. See *California v. Hodari,* 499 U.S. 621, 624-25, 111 S.Ct. 1547, 1549-50, 113 L.Ed.2d 690 (1991).

Defendant relies heavily upon *Sherwood v. Mulvihill*, 111 F.3d 396 (3rd Cir. 1997), in stating that "probable cause exists if there can be determined that there was a 'fair probability' at the time of the arrest that the person arrested committed an offense." Defendants' reliance upon the *Sherwood* case is misplaced. *Sherwood* dealt with an execution of a search warrant on a known drug dealer's house. *Id.* The analysis of the *Sherwood* case focused upon deficiencies in affidavit serving as the basis of the search warrant. *Sherwood* stated that "[P]robable cause exists to support the issuance of a search warrant if, *based on a totality of the circumstances*, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 401 *citing Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) [Emphasis added].

In this case, the *"totality of the circumstances"* focuses upon the initial stop. Nowhere in the statements from Officer Elsaesser can it be found that there was

any particularized suspicion that Mr. Ledford had violated *any* law.  Although Officer Elsaesser avers that Mr. Ledford ran from a group of people to behind a building, Mr. Ledford's account is completely different.  Herein lays the issue of fact for a jury to hear and determine.  If Officer Elsaesser is to be believed, why didn't he question the "group" that Mr. Ledford allegedly ran from?  According to Officer Elsaesser's own words, he doesn't trust anyone in that neighborhood.  [Elsaesser Deposition, Pg. 58, 59]  What is unbelievable is that Officer Elsaesser states that there is a group of people that were present but he doesn't do any further inquiry to determine if there is a reason why Mr. Ledford went in back of a building.  A review of pages 58 and 59 of Officer Elsaesser's deposition seriously calls into question the "subjective" component of his judgment to pursue Mr. Ledford.

```
"12    Q. When you were parked in front and those
 13    people were sitting there and Mr. Ledford's head first
 14    came out and disappeared, did you ask any people who
 15    were standing there if they knew him?
 16    A. I don't know if they were still there
 17    at that point, I don't think they were, but, no, I
       did
 18    not.
 19    Q. Did they flee in the area, too?
 20    A. No.
 21    Q. Did they walk away from the area?
 22    A. I can't recall what they did. They
 23    were -- There was several people out in that area.
 24    Q. Could you have asked one, do you know
 25    that gentleman, has that gentleman been here for
       five
```

                                                              Page  59
```
  1    minutes, wouldn't that have satisfied your need to
  2    know if he was the one who bailed?
  3    A. No. No, it wouldn't.
  4    Q. Why, 'cause you wouldn't believe the
  5    citizens on the street?
  6    MR. HARRIS: Objection. You can answer.
  7    A. Because you have a subject actively
```

MEMO IN OPPO - 7

> 8   trying to avoid the police, and in that area, no, I
> 9   don't believe the citizens, most of them. You have to
> 10  go on your initial instinct to follow-up your
> 11  investigation."

Officer Elsaesser's comments clearly reflect a lack of "reasonable suspicion" when one looks at these facts.  His suspicion that Mr. Ledford was *"actively"* trying to avoid the police is a stretch in this case.  At the time he was trying to approach Mr. Ledford, there are no facts clearly illustrating that Mr. Ledford was trying to avoid the police for a criminal reason.  Although Officer Elsaesser attempts to call Mr. Ledford's action "flight", assuming *arguendo* that this is true, flight alone fails to give rise to probable cause.  See *Illinois v. Wardlow*, 528 U.S. 119, 129, 120 S.Ct. 673, 679.  In analyzing these issues, the *Illinois* Court stated that factors "such as the time of day, the number of people in the area, the character of the neighborhood, whether the officer was in uniform, the way the runner was dressed, the direction and speed of the flight, and whether the person's behavior was otherwise unusual might be relevant in specific cases.  This number of variables is surely sufficient to preclude either a bright-line rule that always justifies, or that never justifies, an investigative stop based on the sole fact that flight began after a police officer appeared nearby." *Id.* at 130.

      The facts in this particular case differ as to what precipitated Officer Elsaesser shining his light at the corner of the building.  You have Officer Elsaesser stating that Mr. Ledford ran to the back of the building and you have Mr. Ledford stating that he didn't see any police officer prior to going to the back of the building.  Although Defendant cites a passage where Mr. Ledford used the word "ran" to describe his thought process when the urge to urinate hit him – i.e. looking for somewhere to run at to use the bathroom – this statement read in the entirety

reflects a colloquialism similar to one making the statement that he "ran" to the store even though he might have actually driven a car to the store.

What makes Officer Elsaesser's statements that Mr. Ledford ran unbelievable is that if he truly believed that the act of running were somehow suspect, he saw other people in the area – some of which he assumed were with Mr. Ledford – but didn't take the time to even ask these individuals if they knew Mr. Ledford or why he might have gone to the back of the building. It is an issue of fact that a jury will need to evaluate Officer Elsaesser's veracity.

Defendant also outlines the fact that Mr. Ledford was urinating in back of the building right before he was tackled by the police. None of the policemen saw this otherwise they would have charged Mr. Ledford with some type of violation based upon this conduct. Because Mr. Ledford's act of urinating behind the building was not know by any of the officers until Mr. Ledford's deposition on January 24, 2003 – nearly three years after the incident – the act of Mr. Ledford relieving himself is irrelevant as to whether it was objectively reasonable for Officer Elsaesser to have even approached Mr. Ledford in the first place. It was not an articulated fact presented by Officer Elsaesser justifying the initial stop of Mr. Ledford. The initial stop violated Mr. Ledford's Fourth Amendment Constitutional Right.

   **2. OFFICER ELSAESSER'S ACTIONS WERE NOT REASONABLE**

The second prong of analyzing issues in qualified immunity focuses on whether the actions taken by Officer Elsaesser were *objectively* reasonable. See *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034 (1987). In order to determine whether Officer Elsaesser's actions were objectively reasonable, a jury will need to determine *what* it believes *the facts actually are* based upon testimony and

evidence. As stated above, this factor precludes the Court's determination of the qualified immunity due to the differing facts in this case.

As stated in *Illinois v. Wardlow, supra,* "Flight alone, however, is not at all like a 'series of acts, each of them perhaps innocent in itself, but which taken together warran[t] further investigation.'" *Id. citing Terry v. Ohio*, 392 U.S. 1, 5-7, 22-23, 88 S.Ct. 1868 (1968). "Nor is flight similar to evidence which in the aggregate provides 'fact on fact and clue on clue afford[ing] a basis for the deductions and inferences,' supporting reasonable suspicion. *Id. citing U.S. v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

In this case, Defendants have not cited anything more than flight. Although they contest that this area is a "high-crime" area, there is nothing in the record to clearly establish the basis of this claim or connect Mr. Ledford to any wrongdoing at the time of the constitutional violation. There is absolutely no *nexus* associated between the alleged flight and additional criminal activity. Also, the facts articulated by both Mr. Ledford and Officer Elsaesser is that there were other citizens out in this area and that Officer Elsaesser failed to ask any one in this area if they saw the individual suspect outlined over the radio. This factor adds to the suspicion of Officer Elsaesser's conduct and whether it was objectively reasonable. When taken separately, there is absolutely no conduct by Mr. Ledford that would lead a reasonable officer to approach Mr. Ledford, let alone, tackle him and place him under arrest.[1]

---

[1] Although Defendants aver that other police officers support Officer Elsaesser's actions, this is not unusual. As a rule it is clear that Officers will support each other. What is very telling is that despite these officers stating that they thought they could chase down citizens *if they fit a description*, Officer Hankerson clearly states that he didn't see Mr. Ledford "Obstruct Justice" thereby violating a criminal statute. [Hankerson Deposition, Pg. 74] This same officer permitted Mr. Ledford to still be charged with "Obstructing Justice". **All charges against Mr. Ledford were later dismissed.**

Because of Officer Elsaesser's conduct, Mr. Ledford was not only subjected to an unreasonable stop, but also an unreasonable seizure of his person when the other police officers immediately tackled him.  Clearly, Mr. Ledford also had a constitutionally protected right to be free from the use of excessive force under the Fourth Amendment.  See *Graham v. Connor*, 490 U.S. 386, 392-93, 109 S.Ct. 1865, 1869-70, 104 L.Ed.2d 443 (1989).

### 3. THE OFFICERS USED EXCESSIVE FORCE ON PLAINTIFF LEDFORD

Crucial to this final issue of determining Plaintiff's excessive force claim, one must review the facts at issue.  In this case, Plaintiff has clearly stated that he was tackled, handcuffed, and then maced.  [Ledford Deposition, Pg. 41]  Officer Elsaesser testified that he was the officer who used the mace on Mr. Ledford. (Elsaesser Deposition, Pg. 39)  Once maced, the police arrested Mr. Ledford for the Obstruction of Justice charge and resisting arrest.  As stated in *Adams v. Metiva,* 31 F.2d 375 (6th Cir. 1994), if the defendant policemen arrested the "plaintiff without probable cause, or subjected him to more force than was reasonably necessary under the circumstances, then they are liable for his injuries.  What they believed is not at issue, and they cannot have acted in good faith."  *Id*. at 387.

In this case, Mr. Ledford's account of the facts illustrates excessive force. Tackling an unarmed citizen who clearly does not fit into the description of a suspect who is only wanted for a traffic violation breaches constitutionally protected rights.  See *Adams v. Metiva, supra,* at 386.

Because the facts in this matter differ between the Plaintiff and Defendants, there are contested issues of material facts and Summary Judgment is not

appropriate.  See *Adams, supra*. See Also *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th 1989); *Holt v. Artis*, 843 F.2d 242 (6th Cir. 1988); *Jackson v. Hoylman,* 933 F.2d 401 (6th Cir. 1991); and *Sova v. Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998).  What makes this case so disturbing is the fact that Mr. Ledford testified that he heard all of the officers at the scene talking to each other once he had been maced, handcuffed, and placed in a police vehicle stating that they knew that he was not the suspect wanted for the traffic violation yet they still charged him with a crime.  (Ledford Deposition, Pg. 42-44)

## CONCLUSION

There are material issues of fact present in this case relating to the initial stop of Mr. Ledford and whether this constitutional violation was reasonable.  Also, there are material facts in dispute relative to the actual arrest and macing of Mr. Ledford.  Because this entire case focuses upon these *issues of fact*, Summary Judgment is inappropriate.  Reasonable minds can come to different conclusions and Mr. Ledford deserves his day in Court.

Respectfully submitted,

/s/ John J. Helbling
/s/ Mark T. Tillar
John J. Helbling 0046727
Mark T. Tillar 0029898
Trial Attorneys For Plaintiffs
3672 Springdale Road
Cincinnati, Ohio 45251
Telephone: (513) 923-9740
Fax: (513) 923-9741

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Memorandum In Opposition To The Motion for Summary Judgment By the City of Cincinnati Defendants was electronically filed on March 1, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> /s/ John J. Helbling
> JOHN J. HELBLING (0046727)