UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **STEVEN LEDFORD, ET AL.** | : | Case No: C-1-01-469 |
| 1086 Pennington Court Apt # 1 | : | |
| Cincinnati, Ohio 45240 | : | (Judge Dlott) |
| **Plaintiff,** | : | |
| | | CITY OF CINCINNATI ET AL.'S |
| Vs. | | RESPONSE TO PLAINTIFF'S REPLY |
| | : | TO THE CITY OF CINCINNATI |
| | | ET AL'S MOTION FOR SUMMARY |
| **CITY OF CINCINNATI, ET AL.** | : | JUDGMENT |
| 801 Plum Street | | |
| Cincinnati, Ohio 45202 | : | |
| **Defendant.** | : | |

**I. The Officers are entitled to Qualified Immunity.**

    **A. The Officers were conducting a reasonable and legitimate *Terry stop* investigation.**

In *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982),* the U.S. Supreme Court stated that "[g]overnment officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." Accordingly, it is first important to determine if the individual has alleged a violation of a clearly established constitutional right. *Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996).* The court thereafter must then discern whether or not a violation of this right has occurred and whether or not "the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights. *Id*.

In *Illinois v. Wardlow* 528 U.S. 119 (2000), the U.S. Supreme Court in a case factually similar to the case at bar stated that the Officer's actions did not violate a clearly established constitutional right after one of the arresting Officer's witnessed Plaintiff run from them in a high crime area. Specifically, the U.S. Supreme Court in *Wardlow* held that situations:

> involving a brief encounter between a citizen and a police officer on a public street, [are] governed by *Terry,* under which an officer who has a reasonable, articulable suspicion that criminal activity is afoot may conduct a brief, investigatory stop. While "reasonable suspicion" is a less demanding standard than probable cause, there must be at least a minimal level of objective justification for the stop. An individual's presence in a "high crime area," standing alone, is not enough to support a reasonable, particularized suspicion of criminal activity, but a location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation.
> *Id. at. 124*.

The Court went on further to state in *Wardlow* that the Officers had a legitimate, reasonable suspicion that the suspect was involved in criminal activity upon his fleeing from them. *Id.* The Court stated specifically that "[i]n this case, … it was also [the defendant's] unprovoked flight that aroused the officers' suspicion." *Id.* The Court further added that "[n]ervous, evasive behavior is another pertinent factor in determining reasonable suspicion, and headlong flight is the consummate act of evasion." *Id.* The Court also recognized that a determination made by an Officer confronted with the difficult task of assessing the criminal motivations of a suspect based on several intangibles such as the high crime activity of a particular area, the time of night, unprovoked flight and other behavioral indicia by the suspect should be based on a reasonableness standard coupled with commonsense judgments and inferences. *Id.* Specific to this point, the U.S. Supreme Court in *Wardlow*, stated that "[i]n reviewing the propriety of an officer's conduct, courts

do not have available empirical studies dealing with inferences from suspicious behavior, and this Court cannot reasonably demand scientific certainty when none exists. *Id.* Thus, the reasonable suspicion determination must be based on commonsense judgments and inferences about human behavior." *Id.* The Court thereafter stated that [w]hile flight is not necessarily indicative of ongoing criminal activity, *Terry [v. Ohio,]* recognized that officers can detain individuals to resolve ambiguities in their conduct and thus accepts the risk that officers may stop innocent people." *Id. at. 125*.

Similar to *Wardlow*, the 6th Circuit Court of Appeals in *Watkins v. City of Southfield, 221 F3d 883, 888 (2000),* stated that "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely in making a *Terry* stop." Citing the U.S. Supreme Court in *Adams v. Williams, 407 U.S. 143, 145-146 (1972)*, the Court in *Southfield,* held that:

> [t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

As stated throughout the City of Cincinnati's et al's Motion for Summary Judgment, Officer Elsaesser just like the Officers in *Wardlow*, and *City of Southfield,* had reasonable suspicion to stop and detain Plaintiff. *528 U.S. at 119; 221 F3d at 883.* Like in *Wardlow*, were the Officer witnessed a suspect flee in an attempt to evade Officers who were in a high crime area known for heavy narcotics trafficking and *City of Southfield,* where Plaintiff was stopped and detained for suspicious activity in a high crime area, Plaintiff in the instant case fled from Officer Elsaesser to the rear of a near by building hoping to hide

3

from the Officers in the area. *Id.* As noted in the City of Cincinnati's et al's Motion for Summary Judgment, Officer Elsaesser and a host of other Officers in the area were responding to the area to assist in search of a fleeing suspect from a stolen car. Officer Elsaesser testified during his deposition testimony that Plaintiff's behavior raised his suspicion about Plaintiff. *(Elsaesser Deposition. Pg. 49).* In fact, Officer Elsaesser testified that because Plaintiff ran behind the building and failed to come from behind the building when asked to do so that he was not sure if Plaintiff was the suspect which fled from the stolen car or not. *(Elsaesser Deposition. Pg. 49).* Officer Elsaesser further indicated that he did not know if Plaintiff was in fact the suspect that fled from the stolen car. For this reason, it was his intention to conduct a *Terry* investigation when he directed Plaintiff to come from behind the building. *(Elsaesser Deposition. Pg. 49).*

Plaintiff states in his Response to the City of Cincinnati's Motion for Summary Judgment that "this matter boils down to the statements made by Officer Elsaesser and Plaintiff." *(Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment-pg.6).* Plaintiff does not dispute the facts as stated above by Officer Elsaesser. In fact, during his deposition, Plaintiff admitted that he was committing a criminal act behind the building when Officer Elsaesser saw him and that this was the reason he would not come out from behind the building when directed to do so by Officer Elsaesser. That was also the reason he tried to hide from Officer Elsaesser after the spotlight was directed towards him. Specifically, during Plaintiff's deposition, he stated that:

> *And so when I was walking back to the car then I had*
> *to use the bathroom and so I says, you know I'm looking*
> *around like, you know, where can I run at and use the*
> *bathroom. So I **ran** behind a building there on the corner*
> *across from the Motorcycle Club to use the bathroom,*
> *and when I used the bathroom I looked around the corner*

4

> *and the Officer was shinning his spotlight down the side of the building, then I said he, you know, he caught me using the bathroom. So, and so I turned around to go around to the other side. The Officer I thinks backs up, and then all of a sudden I go to walk back around from the building and then it's like cops come from, come from all directions, like just bum rush me, you know.*
> *(Ledford Deposition. Pg. 31).*

To be sure, from the suspicious behavior displayed by Plaintiff as described by the undisputed facts above and as more thoroughly outlined in the City of Cincinnati et al's Motion for Summary Judgment, it is clear that Officer Elsaesser had a legitimate reason to believe that Plaintiff may have been the fleeing suspect from the stolen car or that he was engaged in some other criminal activity. As such, Officer Elsaesser having a legitimate reason to believe that Plaintiff may have been the fleeing suspect from the stolen car or that he was engaged in some other criminal activity, it is clear that Officer Elsaesser did not violate a clearly established constitutional right afforded to Plaintiff. Assuming for purposes of argument this Court finds that Plaintiff violated a clearly established constitutional right afforded to Plaintiff, the second prong of the qualified immunity analysis requires the Court to determine if the Officer's actions were objectively unreasonable in light of the circumstances presented. As mentioned and more thoroughly explained in the City of Cincinnati et al's Motion for Summary Judgment, several Officers deposed by Plaintiff's counsel concluded that Officer Elsaesser's actions were not unreasonable. In a footnote, Plaintiff alleges that "Although Defendants aver that other police officers support Officer Elsaesser's actions, this is not unusual. As a rule, it is clear that Officers will support each other." *(Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment-pg 10, footnote 1).* Plaintiff however makes this assertion without any supporting information-empirical, anecdotal or otherwise. The material

objective facts as stated under oath by sworn Police Officers by way of deposition testimony in this case is that Officer Elsaesser's actions were reasonable. As such, Officer Elsaesser and all named public officials in the Complaint are entitled to Summary Judgment on all causes of action raised by Plaintiff in his Complaint.

**B. There was a reasonable application of force used to perfect Plaintiff's arrest.**

The reasonableness of a particular use of force by an officer must be assessed "from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight." *Graham v. Connor, 490 U.S. 386, (1989).* This perspective allows "for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." *Id*. The Officers herein did not use any more force than was necessary to perfect Plaintiff's arrest. Plaintiff testified that he was tackled and subsequently maced and handcuffed as he was trying to avoid Officer Elsaesser because he knew that urinating in a public place was illegal. *(Ledford Deposition pg. 85).* Plaintiff, however, as mentioned in the City of Cincinnati et al's Motion for Summary Judgment did not attribute any excessive use of force against Officer Elsaesser or any other Officers on the scene at all. *(Ledford Deposition pg. 42).* He has failed in both the Complaint or during his deposition testimony to allege specifically which if any of the Officer's listed in the Complaint allegedly tackled him or which Officer employed the use of chemical irritant. *(Ledford Deposition pg. 42).* While it is true that Officer Elsaesser stated that he used chemical irritant to get Plaintiff under control, the use of chemical irritant is not a per se use of excessive force. *(Elsaesser Deposition. Pg. 39).*

City of Cincinnati Police Officers are trained to use only that force which is necessary in a given situation. (*Police Chief Thomas Streicher Deposition-Pg. 82-84).* The Officers are

6

trained to follow a use of force continuum as a guide. (*Police Chief Thomas Streicher Deposition-Pg. 82-84*). The use of force continuum is "a listing of options that an officer has to address a person who needs to be brought under control for a specific reason by a police officer." (*Police Chief Thomas Streicher Deposition-Pg. 82-84*). An officer has to select the type of force that is necessary … in his or her opinion to address the situation at hand." (*Police Chief Thomas Streicher Deposition-Pg. 82-84*). The use of force pursuant to the continuum is a "discretionary decision that is best left with the officer, because it could turn out to be a life and death decision for the officer about where to go in the continuum…." (*Police Chief Thomas Streicher Deposition-Pg. 82-84*). Chemical irritant is one of the least intrusive displays of force at an Officers disposal pursuant to the use of force continuum. (*Police Chief Thomas Streicher Deposition-Pg. 82-84*). During Police Chief Streicher's deposition, he stated that the use of chemical irritant was a reasonable display of force during several different phases of arrest and or detention. As an illustration of this point, Chief Streicher was asked the following questions and he gave the following answers:

*Q. When somebody's handcuffed can you based upon your experience and as Police Chief, think of a scenario where macing somebody while handcuffed would be appropriate in the use of force?*

*A. Yes, very many, very many times.*

*Q. Can you explain it to me?*

*A. Very many types.*

*Q. Can you explain just one or two.*

*A. If a person's engaged in activity that poses a risk of injury to themselves, you can do that. If a person's engaged in activity where a person is continuing to resist the officer's attempts to take them into custody or bring them under control, you could use chemical irritant.*

*If a person is repeatedly spitting at an officer, you may be able to use irritant in some situations to stop that behavior. If a person is attempting to bite a police officer and the officer doesn't have the ability to get far enough away from that person, they could use irritant in that situation. If a person is smashing his head against a window or a rock or a wall or a building and hurting themselves, an officer can use irritant in that situation. There's a number of situations where it becomes appropriate.*

(*Police Chief Thomas Streicher Deposition-Pg. 83-85*).

As with all other claims arising under the sphere of 42 U.S.C. Section 1983 qualified immunity shields officers acting under the color of law if their actions were objectively reasonable under the circumstances at hand. This rationale as discussed in *Graham v. Connor*, is the cornerstone of any analysis involving a use of force claim in juxtaposition to the privilege of qualified immunity. In the instant case, Plaintiff was detained pursuant to a legitimate and reasonable *Terry* stop based upon the high crime area of the detention, the time of night and Plaintiff's suspicious activity of running from the Officers to secret himself behind a building and refusing to come out after being asked by the Officer to do so. He was maced and handcuffed pursuant to a reasonable and least intrusive application of force in response to Plaintiff's resistance. (Hankerson deposition. Pg. 48). From these above stated facts, it is clear that no application of excessive force was used in Plaintiff's arrest.

8

**Conclusion**

For the above stated reasons and for the reasons more thoroughly stated in the City of Cincinnati et al's Motion for Summary Judgment, the named Defendants in this case are entitled to summary judgment as a matter of law on all of the issues raised by Plaintiff as there are no genuine issues of material fact.

>Respectfully submitted,
> J. Rita McNeil
>City Solicitor
>
>*/s/ Thomas J. Harris*
>Thomas J. Harris (0065946)
>Assistant City Solicitor
>Room 214, City Hall
>Cincinnati, Ohio 45202
>(513) 352-3321
>Fax: (513) 352-1515
>Email: tom.harris@cincinnati-oh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion has been sent by regular U.S. Mail to Mark Tillar, at 111 Rossmore Ave. Cincinnati, Ohio 45237, this 18th day of March 2004.

>*/s/ Thomas J. Harris*
>Thomas J. Harris (0065946)